**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **CHARLES A. BOGGS,**<br><br>**PLAINTIFF,**<br><br>**VERSUS**<br><br>**BP EXPLORATION & PRODUCTION INC., et al.,**<br><br>**DEFENDANTS.**<br><br>**Related to: B3 PLEADING BUNDLE in MDL No. 2179** | * * * * * * * * * * * * * | **CIVIL ACTION NO. 16-13476**<br><br>**JUDGE MORGAN**<br><br>**MAGISTRATE JUDGE ROBY** |

* * * * * * * * * * * * * * * * * * * * *

**BP'S MEMORANDUM IN SUPPORT OF ITS *DAUBERT* MOTION TO EXCLUDE THE OPINIONS OF PLAINTIFF'S EXPERT DR. NAOMI ORESKES**[1]

1 The moving parties are the defendants, BP Exploration & Production Inc., BP America Production Company, and BP p.l.c. (collectively "BP").

# TABLE OF CONTENTS

**Page**

**BACKGROUND ........................................................ 1**
- I. Plaintiff's Allegations. ........................................ 1
- II. Dr. Oreskes' Opinions. ........................................ 2

**ARGUMENT ........................................................ 3**
- I. Dr. Oreskes' Testimony Is Not Relevant to Any Issue in this Case. ........ 3
- II. Dr. Oreskes' Testimony Is Inadmissible Because It Does Not Reflect Any Scientific or Specialized Expertise. ........................................ 6
- III. Dr. Oreskes' Opinions Are Not Based on Any Identified or Reliable Methodology. ........................................ 9

**CONCLUSION ........................................................ 13**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Air Crash Disaster at New Orleans, La.*,
795 F.2d 1230 (5th Cir. 1986) ....................................................9

*Curtis v. M&S Petroleum, Inc.*,
174 F.3d 661 (5th Cir. 1999) ....................................................11, 13

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
509 U.S. 579 (1993).................................................... *passim*

*Goodridge v. Dept. of Public Health*,
440 Mass. 309 (2003) ....................................................7

*Greger v. C.R. Bard, Inc.*,
Civil No. 4:19-CV-675-SDJ, 2021 WL 3855474 (E.D. Tex. Aug. 30, 2021)..........................8

*Highland Cap. Mgmt., L.P. v. Schneider*,
379 F. Supp. 2d 461 (S.D.N.Y. 2005)....................................................7

*Kumho Tire Co., Ltd. v. Carmichael*,
526 U.S. 137 (1999)....................................................9, 12

*Mann v. National Review, Inc. et al*,
2012 CA 008263....................................................11, 12

*Marvel Characters, Inc. v. Kirby*,
726 F.3d 119 (2d Cir. 2013)....................................................7, 8

*Moore v. Ashland Chem., Inc.*,
151 F.3d 269 (5th Cir. 1998) (*en banc*) ....................................................3, 9, 11

*NAACP v. City of Niagara Falls, N.Y.*,
65 F.3d 1002 (2d Cir. 1995)....................................................7

*Naujalis v. INS*,
240 F.3d 642 (7th Cir. 2001) ....................................................7

*Nola Spice Designs, LLC v. Haydel Enters.*,
Civil Action No. 12-2515, 2013 WL 12229033 (E.D. La. Aug. 12, 2013) ..............................6

*In re Rezulin Prods. Liab. Litig.*,
309 F. Supp. 2d 541 (S.D.N.Y. 2004)....................................................7, 8

*S.E.C. v. Lipson*,
46 F. Supp. 2d 758 (N.D. Ill. 1998) ....................7

*Zenith Elecs. Corp. v. WH-TV Broad. Corp.*,
395 F.3d 416 (7th Cir. 2005) ....................11

**Rules**

Federal Rule of Evidence 702 ....................3, 12, 13

Federal Rule of Evidence 702(a) ....................6

Plaintiff Charles Boggs identified Dr. Naomi Oreskes as an expert in the "history of science" who purports to "question the quality" of unspecified scientific "measurements" gathered during the spill response.[2] Dr. Oreskes admittedly does not apply any scientific or technical expertise that would assist the trier of fact in assessing Mr. Boggs' claims. Indeed, nowhere in her 76-page report does Dr. Oreskes even mention Mr. Boggs. She concedes she "cannot say" whether Boggs or anyone else "involved in the oil spill and clean-up were harmed by exposure to toxic substances."[3] Nor can she identify any post-spill dataset that was compromised. She simply reviewed and regurgitates limited documents selected by Plaintiff's counsel, without applying any scientific framework or methodology, using her title as an historian to disguise what is in fact simple advocacy. BP therefore moves to exclude Dr. Oreskes' opinions under Federal Rule of Evidence ("F.R.E.") 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) because (1) they would not be helpful to the trier of fact and (2) do not reflect any reliable methodology.

## BACKGROUND

### I. Plaintiff's Allegations.

Mr. Boggs is a resident of Long Beach, Mississippi, who alleges he was exposed to toxins in the aftermath of the DWH oil spill. Originally, his lawsuit alleged many injuries, but several of his claims have now been dismissed on summary judgment, R. Doc. 206, and, according to Boggs, what remains at issue are his "fear of leukemia recurrence and respiratory and permanent lung damage" and their related symptoms.[4]

---

2 Ex. A, Report at 2.

3 *Id.* at 76.

4 Plaintiff's Response in Opposition to Defendants' Motion for Partial Summary Judgment, R. Doc. 195, at 3, 5.

## II. <u>Dr. Oreskes' Opinions</u>.

Dr. Oreskes is an "historian of science." She is not an epidemiologist, toxicologist, chemist, industrial hygienist, or medical doctor,[5] and she did not consult anyone with expertise in those areas in reaching her opinions in this case.[6] Her 76-page expert report contains no mention of Mr. Boggs or any other Gulf Coast resident. She does not offer any opinion on the toxicity of oil or whether Mr. Boggs or any other Gulf Coast residents or *Deepwater Horizon* clean-up workers were exposed to, or harmed by, any toxins from the spill or response.[7]

She claims to assess BP's sampling and monitoring efforts during the *Deepwater Horizon* response, an effort spanning several years and involving thousands of personnel and numerous government agencies, by relying on 118 documents from a small set provided to her by plaintiff's counsel.[8] Dr. Oreskes alleges that those documents-- none of which include any actual data sets or address either Mr. Boggs or any other Gulf Coast resident like him--undermine the reliability of unspecified "measurements" collected and prevent fulsome and accurate reporting of that data to the public.[9] Despite these claims, Dr. Oreskes did not identify a single data set, BP, federal,

---

5 *See* Ex. B, Dep. at 239:7-13.

6 *Id.* at 48:12-49:3.

7 *Id.* at 241:16-19 ("Q. You've not been specifically retained to assess the potential toxicity of oil in this case. Correct? A. Correct."); *Id.* at 209:15-18 ("· ·Q. And you don't have any sections in your report focused on claims of residential exposure. Correct? A. Correct."); Ex. A, Report at 76 ("I cannot say whether workers involved in the oil spill and clean-up were harmed by exposure to toxic substances.").

8 *Id.* at 225:16-226:3 ("Q: [] You did not read all 1,491 documents that were provided to you by plaintiff's counsel. Right? A. No, I did not. I read many hundreds, but I did not read every one of the 1,491. Q. And in your report, you cite to 118 of the documents that were provided to you by plaintiff's counsel. Again, we counted. A. Okay. Q: Did you count? No, I didn't count.").

9 Ex. A, Report at 20-21.

state, or otherwise, that she believes is unreliable.[10] Nor did she explain how her testimony would make any issue in this case more or less likely.

Dr. Oreskes admits that there is no accepted methodology in the historian of science community.[11] Seemingly recognizing the limited nature of the documentation provided to her by Plaintiff's counsel and her inability to opine on actual scientific principles given her lack of expertise, her opinions are couched in terms of uncertainty, such as "could have[s]" and "likelihood[s]," rather than any true determinations. Dr. Oreskes' opinions are irrelevant and unreliable and should be excluded.

## ARGUMENT

Federal Rule of Evidence 702 and *Daubert* permit experts to offer opinions only if the proponent can show that (a) the expert's specialized knowledge will help the trier of fact, (b) the testimony is based on sufficient facts or data, (c) the testimony is the product of reliable principles and methods, and (d) the expert has reliably applied those principles and methods. Dr. Oreskes' opinions are neither relevant nor reliable, and are therefore inadmissible.

### I. Dr. Oreskes' Testimony Is Not Relevant to Any Issue in this Case.

"Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 275 (5th Cir. 1998) (*en banc*) (citing *Daubert*, 509 U.S. at 593-95). The issue in this case is whether Boggs, a Gulf Coast resident, was

---

10 Ex. B, Dep. at 103:24-104:6 ("Q. You have not identified in your report, Dr. Oreskes, and particular data set collected by BP that you deemed to be unreliable. Correct? A. Correct. Q. And you have not identified any data set collected by any other entity as being unreliable. Correct? A. Correct.").

11 *Id.* at 221: 4-12 ("Q. And so in your field for the history of science, there are not written standards regarding critical thinking to be used. Correct? A. Well, as I said, there are books that discuss what the standards of history are. If by 'written standards' you mean formalized standards that everyone agrees to or that have been voted upon by some absolute authority, **then correct, there is no such written standard of that type**.") (emphasis added).

exposed to levels of any toxins from the *Deepwater Horizon* spill or response that caused his claimed medical conditions. Dr. Oreskes, an "historian of science," admits that she does not offer any opinions about Mr. Boggs, his alleged exposure, or what caused his claimed medical conditions:[12]

> Q. And you don't have any sections in your report about Mr. Boggs, the plaintiff. Correct?
>
> A. Correct. My report is not case-specific.
>
> Q. And in fact, his name doesn't even appear in your report. Right?
>
> A. I believe that's correct.

Dr. Oreskes also admits she has no opinions "with respect to residents of Gulf Coast communities" like Mr. Boggs.[13] She agrees that she does not offer any opinion as to whether Mr. Boggs or any other Gulf Coast residents – or even cleanup workers – were exposed to any toxins from the spill or response:[14] Nor does she offer any opinion as to whether anyone, including Mr. Boggs, was harmed by any such exposure:[15]

---

12 Ex. B, Dep. at 209:19-24.

13 Ex. B, Dep. at 129:2-5; *see also id.* at 141:13-15 ("Q: And you render no conclusions with respect to residents of Gulf Coast communities. Right? A: Correct.").

14 *Id.* at 126:19-127:10; *see also id.* at 209:15-18 ("Q: And you don't have any sections in your report focused on claims of residential exposure. Correct? A: Correct.).

15 *Id.* at 126:19-127:10.

```
        So you say on page 76 of your report that
"As a historian of science, I cannot say whether
workers involved in the oil spill and clean-up
were harmed by exposure to toxic substances."  Do
you see that?
    A. Correct.
    Q. You would agree that you similarly cannot
```

```
say whether any residents of Gulf Coast
communities were harmed by exposure to toxic
substances associated with the Deepwater Horizon
incident?
    A. Correct.
    Q. And you would agree that you cannot say
whether Mr. Boggs was harmed by exposure to toxic
substances associated with the Deepwater Horizon
incident.  Right?
    A. Correct.
```

While conceding that she "cannot say whether workers involved in the oil spill and clean-up were harmed by exposure to toxic substances,"[16] Dr. Oreskes speculates that unspecified, non-existent data "*could have* established health effects on clean-up workers." [17] Dr. Oreskes provides no support for this conjecture, and in any event, Mr. Boggs never worked as a clean-up worker. Because Dr. Oreskes' testimony is irrelevant to any issue in this case, it is unhelpful to the trier of fact and should be excluded.

16 Ex. A, Report at 76.

17 *Id.* at 20 (emphasis added).

## II. **Dr. Oreskes' Testimony Is Inadmissible Because It Does Not Reflect Any Scientific or Specialized Expertise.**

Expert testimony should be excluded where it "does not include any opinions that the average lay person could not come to on his or her own and does not offer any information beyond what the parties can offer through legal argument and fact witnesses." *Nola Spice Designs, LLC v. Haydel Enters.*, Civil Action No. 12-2515, 2013 WL 12229033, at *2 (E.D. La. Aug. 12, 2013). Dr. Oreskes admits she does not apply any specialized scientific or other specialized analysis in forming her opinions; instead, she simply constructs a "historical" narrative from select documents chosen by Plaintiff's counsel – documents that the jury is more than capable of reading for themselves.

Dr. Oreskes' main task involved "finding, reading, and interpretation of historical documents."[18] She agrees that her "expert report [is] based on emails and documents that are subject to interpretation."[19] The majority of her 76-page report is therefore devoted to assembling, reciting, and interpreting the documents Plaintiff's counsel selected for her to read.[20] Based on those materials, she "was asked to pass judgment on the activities undertaken by BP."[21] That will not do. As the Supreme Court instructed in *Daubert*, the requirement in F.R.E. 702(a) that the expert's opinion be based on "knowledge" "connotes more than subjective belief." *Daubert*, 509 U.S. at 590. "Passing judgment" is squarely within the purview of the jury, not any expert.

---

18 Ex. A, Report at 8; Ex. B, Dep. at 210:24-25 ("Q. And you've stated that, like most historians, your methodology relies primarily on the finding, reading, and interpretation of historical documents. Right? A. Correct.").)

19 *Id.* at 267:1-7 (Q. Your words in your expert report are based on emails and documents that are subject to interpretation. Right? A. That's correct. Q. And your interpretation is your interpretation. Correct? A. That's correct.").

20 Ex. A, Report at 22-75.

21 Ex. B., Dep. at 74:6-10 ("I was asked to pass judgment on the activities undertaken by BP, and I restricted my comments to the actions or inactions of BP and the agents that it hired, such as the consultants at ChemRisk.").

An expert in the "history of science" is not needed or appropriate for this case. "The appropriate way to adduce factual details of specific past events is, where possible, through persons who witnessed those events." *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 136 (2d Cir. 2013) (excluding expert testimony constructed through hearsay evidence of available witnesses). Courts therefore routinely exclude witnesses like Oreskes who seek to construct a factual narrative about historical events based on record evidence. *Highland Cap. Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 469 (S.D.N.Y. 2005) ("[A]n expert cannot be presented to the jury solely for the purpose of constructing a factual narrative based upon record evidence"); *S.E.C. v. Lipson*, 46 F. Supp. 2d 758, 763 (N.D. Ill. 1998) ("[E]xpert testimony may not be used merely to repeat or summarize what the jury independently has the ability to understand."); *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 541, 546 (S.D.N.Y. 2004) ("[M]erely repeat[ing] facts or opinions stated by other potential witnesses or in documents produced in discovery" is improper.)

Contrary to Dr. Oreskes' assertion, there is not a concern here that "a person lacking historical expertise is at substantial risk of misconstruing [historical] documents."[22] This is not a case involving the interpretation of ancient texts that may be difficult for jurors to understand.[23] The government reports, e-mails and other documents Oreskes purports to interpret are less than 15 years-old, the vast majority of the witnesses are alive (and many with first-hand knowledge have been identified as fact witnesses in this case), there have been scores of fact witness depositions, and both the public, and documentary record are replete with primary source

---

22 Ex. A, Report at 7.

23 *See, e.g.*, *Naujalis v. INS*, 240 F.3d 642, 645 n.7 (7th Cir. 2001) (allowing expert historian testimony to help determine that the deportee was involved in Nazi atrocities during World War II); *Goodridge v. Dept. of Public Health*, 440 Mass. 309 (2003) (noting expert historian testimony on the history of marriage extending back to the Nineteenth Century in a case concerning same-sex marriage); *NAACP v. City of Niagara Falls, N.Y.*, 65 F.3d 1002, 1020 (2d Cir. 1995) (allowing historical testimony on the discriminatory intent of laws that infringed on the right to vote).

information to assist the trier of fact. Oreskes' claim to superior ability to "construe" the record is pure *ipse dixit*. *See Marvel Characters, Inc.*, 726 F.3d at 136 (excluding proffered expert from offering testimony on recent historical relationship between parties based only on hearsay, speculation, and opinions on the credibility of other witness accounts). Jurors are perfectly capable of "construing" the facts, and that is, in fact, their mandate.

In one key example, Dr. Oreskes offers inflammatory and baseless assertions that BP abused the attorney-client privilege. In her report, Dr. Oreskes reviews BP's privilege log and speculates, without foundation, that "BP may have followed the path blazed by the tobacco industry, which abused attorney-client privilege to hide illegal activities, including fraud."[24] None of these conjectures is founded; they have nothing to do with "history of science," and Oreskes admits they are unproven in any event.[25] These groundless accusations can only serve to inflame the jury rather than help them, and are not the proper subject of expert testimony.

Dr. Oreskes also repeatedly purports to divine BP's intent and motives. For example, she alleges that "BP… acted in numerous ways that … may have been *deliberately intended* to introduce — bias into the scientific studies…" and "[i]n some cases, BP *sought* not merely to influence studies, but to control them."[26] A party's intent is not the proper subject of expert opinions, either. *Greger v. C.R. Bard, Inc.*, Civil No. 4:19-CV-675-SDJ, 2021 WL 3855474, at *9 (E.D. Tex. Aug. 30, 2021) ("[i]nferences about the intent or motive of parties or others lie outside the bounds of expert testimony."); *In re Rezulin Products Liability Litig.*, 309 F. Supp. 2d

---

24 Ex. A, Report at 76.

25 Ex. B, Dep. at 131:9-15 ("when I see lawyers being cc'd on technical documents and people in BP even asking why are the lawyers even involved in this and it's not about a legal question, it's about a technical question, that, for me, is a big red flag. **Now, to prove it I would have to have a lot more documents**…") (emphasis added).

26 Ex. A, Report at 2, 60 (emphasis added).

at 546 ("[T]he opinions of these witnesses on the intent, motives or states of mind of corporations, regulatory agencies and others have no basis in any relevant body of knowledge or expertise.").

Arguing from the record evidence is the lawyers' job, and interpreting that evidence to render a verdict is the jury's job. "The trial judge ought to insist that a proffered expert bring to the jury more than the lawyers can offer in argument." *In re Air Crash Disaster at New Orleans, La.*, 795 F.2d 1230, 1233 (5th Cir. 1986). As Dr. Oreskes put it herself, she is "testifying as a historian looking at the documents after the fact to judge what did or did not transpire."[27] That is a role reserved only for the trier of fact. Dr. Oreskes should not be permitted to usurp the roles of the jury, counsel, and Your Honor, by constructing a speculative narrative based on her subjective and selective interpretation of the record, in an unfounded attack on BP's "motives" and "intent."

## III. Dr. Oreskes' Opinions Are Not Based on Any Identified or Reliable Methodology.

To be admissible, expert testimony must be "not only relevant, but reliable." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. at 589 (1993). Courts apply a five-factor test for gauging the reliability of an expert's methodology:

> (1) whether the expert's theory can be or has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known or potential rate of error of a technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) the degree to which the technique or theory has been generally accepted in the scientific community.

*Moore v. Ashland Chem., Inc.*, 151 F.3d at 275 (*en banc*), *cert. denied*, 526 U.S. 1064 (1999) (citing *Daubert*, 509 U.S. at 593-95). Dr. Oreskes' opinions satisfy none of these requirements: her testimony is not the product of reliable principles and methods because her specialty maintains

---

[27] Ex. B, Dep. at 320: 19-21.

no standards or controls, her methods have no general acceptance in the scientific community, and her method cannot be tested, is not subject to peer review, and has no known error rate.

Dr. Oreskes cannot articulate any recognized methodology she applied in this case. She acknowledges that "[t]here is no one single methodology in history of science,"[28] and that "the exact methodologies used by historians of science in diverse cases will vary."[29] She is unaware of any peer-reviewed article that describes her discipline's methodology,[30] and agrees that there are no written standards that historians of science agree on.[31] Dr. Oreskes was unaware of *any* document that set forth a generally accepted method for determining scientific dishonesty, as she purports to do, in the history of science field.[32] Indeed, there is no established success rate for her methodology, and Oreskes stated that "failure rate" was not a meaningful category of analysis for the history of science.[33]

In fact, as Oreskes confirmed, the only methodology underpinning her approach is the guiding principle that historians should "respect the pastness of the past by grappling with the complexity and inconsistency of the historical record and dealing appropriately with contrary

---

28 Ex. A, Report at 11.

29 Ex. B, Dep. at 212: 11-14.

30 *Id.* 222:8-16 ("Q. And to your knowledge, there is not a peer-reviewed article describing the methodology of an historian of science. Correct? Mr. Durkee: Objection, asked and answered. You can answer. A. As far as I'm aware. It's possible that such an article exists. But if it does, I'm not aware of it.").

31 *Id.* at 221: 4-12 ("Q. And so in your field for the history of science, there are not written standards regarding critical thinking to be used. Correct? A. Well, as I said, there are books that discuss what the standards of history are. If by 'written standards' you mean formalized standards that everyone agrees to or that have been voted upon by some absolute authority, **then correct, there is no such written standard of that type**.") (emphasis added).

32 *Id.* at 223: 22-224:1 ("·Q. Okay.· So you're not aware of a written document that sets forth a generally accepted method for determining scientific dishonesty in your field. Right? A. I'm not aware of any such document.").

33 *Id.*, Dep. at 281: 5-17.

evidence."[34] Such a vague and amorphous "methodology" does not come close to satisfying the requirement that expert testimony must be "grounded in the methods and procedures of science and must be more than unsupported speculation or subjective belief." *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999). Courts are clear that reproducibility is one of the hallmarks of reliable scientific testing and is pertinent to an analysis under *Daubert*. *See* 509 U.S. at 593, 113 S.Ct. 2786 ("[A] key question ... is ... whether [a scientific theory or technique] can be (and has been) tested. Scientific methodology today is based on generating hypotheses and testing them to see if they can be falsified; indeed, this methodology is what distinguishes science from other fields of human inquiry" (internal quotation marks and citation omitted)); *Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416, 419 (7th Cir. 2005) ("An expert must offer good reason to think that his approach produces an accurate estimate using professional methods, and this estimate must be testable. Someone else using the same data and methods must be able to replicate the result."); *see also Moore*, 151 F.3d at 276 (similar); *Zenith Elecs. Corp. v. WH–TV Broad. Corp.*, 395 F.3d 416, 419 (7th Cir.2005) (similar). Dr. Oreskes' report is neither testable nor replicable. Without a recognized methodology, no person could test the validity of her subjective opinions.

Dr. Oreskes was excluded as an expert for these same reasons in an analogous case. In *Mann v. National Review*, Dr. Oreskes sought to testify that certain think-tanks "ignore, misrepresent, or reject principled scientific thought on environmental and climate issues." *Mann v. National Review, Inc. et al*, 2012 CA 008263 B, July 26, 2021 order at 23. The Court excluded Dr. Oreskes' opinions "based upon [her] failure to use a scientific technique which applie[d] reliable methodologies":

> [R]eading and thinking about documents are not the types of 'reliable methodologies' typical of an expert witness, which leaves the Court unable to

[34] Ex. A, Report at 11; Ex. B, Dep. at 212:15 – 213:4.

> distinguish why Dr. Oreskes is more capable than the average juror, who can also read and think about documents. Dr. Oreskes 'reading and thinking' have not been peer-reviewed, have no known success rate, and cannot be replicated by other experts in her field … [and] is not derived from the scientific method and is more aptly described as a historical narrative or research compilation than scientific testimony … derived from her review of documents and reports created by third parties.[35]

Here, just as in *Mann*, Dr. Oreskes' "methodology relies primarily on the finding, reading, and interpretation of historical documents,"[36] an exercise that has not been peer-reviewed, has no known success rate, and cannot be replicated by other experts in her field. And here, like in *Mann*, "reading and thinking" something Dr. Oreskes is no more capable of doing than the average juror.

The gatekeeping function of Rule 702 is designed to ensure that testimony that cannot be independently validated, or verified, is excluded as unreliable.[37] A court need not admit "opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."[38] Dr. Oreskes cannot identify, much less demonstrate the reliability of, any methodology she applies here. Dr. Oreskes' opinions are not "grounded in the methods and procedures of science" but are simply

---

35 Order at 23-34, 25-26, *Mann v. National Review, Inc. et al*, 2012 CA 008263 B, July 26, 2021 (internal citations omitted). The court in *Mann* subsequently, upon a new proffer by counsel, permitted Oreskes to testify only on "the 'importance of scientific expertise and the significance of the scientific method and peer review process in scientific debate.'" Order at 20, *Mann v. National Review, Inc., et al*, 2012 CA 008263 B, Jan. 25, 2022. Oreskes offers no similar opinions here, nor are her opinions as limited as in *Mann*.

36 Ex. B, Dep. at. 210:22 – 211:1 ("Q: And you've stated that, like most historians, your methodology relies primarily on the finding, reading, and interpretation of historical documents. Right? A: Correct.").

37 *Kumho Tire Co., Ltd.*, 526 U.S. at 152 (*Daubert's* gatekeeping function "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.").

38 *Id.*

"unsupported speculation or subjective belief.[39] As such, her testimony is unreliable under *Daubert* and should be excluded.

## CONCLUSION

As Dr. Oreskes admits, she does not offer any opinions related to Mr. Boggs' claims. She applied no known or accepted methodology. Accordingly, BP respectfully requests that Dr. Oreskes' opinions be excluded as unhelpful and unreliable under *Daubert* and F.R.E. 702.

Respectfully submitted,

*/s/ R. Keith Jarrett*

R. Keith Jarrett (Bar #16984)
Charles B. Wilmore (Bar #28812)
Devin Reid (Bar #32645)
**LISKOW & LEWIS**
Hancock Whitney Center
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
Emails: rkjarrett@liskow.com
cbwilmore@liskow.com
dcreid@liskow.com

Wade T. Howard, T.A. (Bar #32041)
**LISKOW & LEWIS**
1001 Fannin Street, Suite 1800
Houston, Texas 77002
Telephone: (713) 651-2900
Email: wthoward@liskow.com

[39] *Curtis*, 174 F.3d at 668 (explaining that Rule 702 requires that expert testimony "must be grounded in the methods and procedures of science and must be more than unsupported speculation or subjective belief.").

and

A. Katrine Jakola, P.C.
(katie.jakola@kirkland.com)
Martin L. Roth, P.C.
(rothm@kirkland.com)
Kristopher Ritter
(ritterk@kirkland.com)
**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000

*Counsel for BP Exploration & Production Inc., BP America Production Company, and BP p.l.c.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 6, 2024, a copy of the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system.

*/s/ R. Keith Jarrett*