**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**
**NEW ORLEANS DIVISION**

| | | |
|---|---|---|
| **CHARLES A. BOGGS** | * | **CIVIL ACTION NO. 2:16-cv-13476** |
| **PLAINTIFF,** | * | **SECTION: J** |
| **VERSUS** | * | **JUDGE MORGAN** |
| **BP EXPLORATION & PRODUCTION INC. AND BP AMERICA PRODUCTION COMPANY ET AL.,** | * | **MAGISTRATE JUDGE WELLS ROBY** |
| **DEFENDANTS** | * | |
| **Related to: B3 PLEADING BUNDLE in MDL No. 2179** | * | |
| * * * * * * * * * * * * * * * * * * * * * * * * | * | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO BP'S *DAUBERT* MOTION TO EXCLUDE THE EXPERT TESTIMONY AND OPINIONS OF DR. ORESKES**

**COMES NOW** Plaintiff CHARLES A. BOGGS ("Plaintiff") by and through undersigned counsel, and submit their Memorandum in Opposition to BP's Motion to Exclude the Opinions of Dr. Naomi Oreskes[1] ("**BP's Motion to Exclude**") and in support thereof, states as follows:

## I. INTRODUCTION AND BACKGROUND

Dr. Oreskes is one of the nation's leading History of Science Professor. She has extensive technical knowledge and experience in matters pertaining to the history of science and in matters of science and society; achieving numerous academic awards and accolades.[2] Dr. Oreskes has a Ph.D. from Stanford University in geological research and history of science with immense on-

[1] *See* Defendants' Memorandum in Support of Their Motion to Exclude the Opinions of Plaintiff's Expert Dr. Naomi Oreskes ("BP's Motion to Exclude"), Rec. Doc. 234.

[2] *See* Dr. Oreskes' Report, ECF No. 238-7 at 5.

point expertise. She is currently working as Professor of the History of Science at Harvard University. As a professional historian of science, Dr. Oreskes studies, in part, the development of scientific knowledge. As she explains in length in her written report, "[h]istorians . . . evaluate how and why specific knowledge claims have been accepted by scientists as factual and true, whereas other claims are rejected as uncertain, or perhaps true but not yet established."[3] Like all scholarly disciplines, Dr. Oreskes' specialty as a historian of science has specific skills and methods developed primarily through education, training, and practice.[4] As Dr. Oreskes states, "[a] great deal of historical training aims to help the historian to develop the necessary skills for contextualization."[5] "Methodologically, historians do their work primarily through the critical reading and interpretation of original documents, referred to as 'primary sources.'"[6] However, historians also make sure of other sources in order to place historical events in context and accurately interpret their meanings and significance.[7]

Although there may not be a type of standardized, formalized protocols or methodologies universal to all historians that BP erroneously argues is legally necessary, "[h]istorians are at all times expected to meet professional standards for rigor, completeness, honesty, and systematic analysis."[8]

Dr. Oreskes has been admitted in other cases in the capacity of an expert historian. She has also authored numerous scholarly papers and books on science, society, and the environment as

---

3 *See* Dr. Oreskes' Report, ECF No. 238-7 at 6.

4 *See id*.

5 *See id* at 7.

6 *Id*.

7 *See id*. at 6

8 *See id.*

described in her written report and CV. Importantly, Dr. Oreskes has published numerous books and peer-reviewed works. For example, Dr. Oreskes worked on a lecture for the Tanner Lectures in Human Values at Princeton University; the resulting book (*Why Trust Science?*) was translated into nine languages and sold over 17,000 copies.[9] She has authored other widely published works on the history of science and scientific methodologies, including works related to corporate-influenced science.[10] Dr. Oreskes has also authored or co-authored over 150 other publications on the history and current practices of science, as well as writing a monthly column for Scientific American Magazine.[11] The U.S. National Science Foundation, The U.S. National Endowment for the Humanities, the American Philosophical Society, NASA, and NOAA have further supported Dr. Oreskes' publication and research work. There is no question that Dr. Oreskes' works are widely published, and her opinions and testimony given in this case are based on extensive experience and specialized knowledge relevant to the disputed issues.

On November 6, 2024, BP Exploration & Production Inc., and BP America Production Company (collectively "**BP**") filed BP's Motion to Exclude the opinions of Dr. Oreskes,[12] which Plaintiff opposes as Dr. Oreskes's opinions are fully admissible for the reasons set forth herein.

---

9 *See* Dr. Oreskes' Report, ECF No. 238-7 at 4.

10 *See id*. at 4-5 (discussing authorship and editorial roles of eight other scholarly books related to science and the environment, including Merchants of Doubt: How a Handful of Scientists Obscured the Truth on Issues from Tobacco Smoke to Global Warming (2010); Discerning Experts: The Practices of Scientific Assessment for Environmental Policy (2019), Science on a Mission (2021), and The Big Myth (2023).

11 *See id.* at 5.

12 *See* BP's Motion to Exclude, Rec. Doc. 234.

## II. LEGAL STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert testimony, including historians.[13] "In *Daubert*, the Supreme Court directly held that an expert witness 'is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation.'"[14] "*Kumho Tire* held that the relevant and reliable standard announced in *Daubert* for scientific expert testimony applied to all types of expert testimony."[15] Rule 702 provides the Court considerable discretion to admit experts provided the witness is "qualified . . . by knowledge skill, experience, training or education," and that the witnesses may testify where "scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue."[16]

The reliability of expert testimony does not hinge on adherence to formalized standards but can be based on the expert's experience and technical knowledge.[17] The Court "must have

---

[13] *See* Fed. R. Evid. 702.

[14] *In re M&M Wireline & Offshore Servs., LLC*, 2016 U.S. Dist. LEXIS 120542, *20 (E.D. La. Sep. 7, 2016) (quoting *Daubert v. Merrell Dow Pharms*., 509 U.S. 579, 592, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993)).

[15] *Peters v. Diamond Offshore Co*., No. 05-2507, 2006 U.S. Dist. LEXIS 62993, at *3 (E.D. La. Aug. 31, 2006) (citation omitted).

[16] *Collins v. Benton,* 470 F. Supp. 3d 596, 601 (E.D. La. 2020) (quoting Fed. R. Evid. 702) (internal quotation marks omitted)

[17] *See United States v. Vicknair*, No. 03-16, 2005 U.S. Dist. LEXIS 11589, at *18-19 (E.D. La. June 1, 2005); *Bolin v. Lowe's Home Ctrs., L.L.C.*, No. 19-11176, 2021 U.S. Dist. LEXIS 83034, at *18 (E.D. La. Apr. 30, 2021) ("The test of reliability is 'flexible' and Daubert's list of specific factors does not necessarily nor exclusively apply to every expert in every case. In *Kovaly v. Wal-Mart Stores Texas, L.L.C.*, the Fifth Circuit acknowledged that, in considering the reliability of some professionals, such as pharmacists, certain Daubert factors will not readily apply, and courts "must consider other factors when determining admissibility, such as whether the expert has enough education and relevant experience to reach a reliable opinion.") (internal citations omitted*)); see also Phillips v. United States*, Civil Action No. SA-08-CA-0619-XR, 2009 U.S. Dist. LEXIS 95267, *9-10 (W.D. Tex. Oct. 13, 2009) (admitting medical doctor with experience

considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable. That is to say, a trial court should consider the specific factors identified in Daubert where they are reasonable measures of the reliability of expert testimony."[18]

In accordance with *Kumho Tire Co.,* the advisory committee's note to the 2000 amendments to Rule 702 explains:

> Some types of expert testimony will not rely on anything like a scientific method, and so will have to be evaluated by reference to other standard principles attendant to the particular area of expertise.
> . . .
> Nothing in this amendment is intended to suggest that experience alone--or experience in conjunction with other knowledge, skill, training or education-- may not-provide a sufficient foundation for expert testimony. . . . In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony.

*Vicknair,* 2005 U.S. Dist. LEXIS 11589, *15 (quoting advisory committee's note to the 2000 amendments to Rule 702).[19]

---

conducting bariatric surgery even where his testimony was not based on any formalized scientific methodology but rather "solely on his experience").

[18] *Hucks v. Bisso Marine, LLC,* No. 14-763, 2015 U.S. Dist. LEXIS 88288 (E.D. La. June 30, 2015) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999)).

[19] *See also Guy v. Crown Equip. Corp.,* 394 F.3d 320, 325 (5th Cir. 2004) ("The 2000 amendments to Rule 702 also reflect the Supreme Court's determination that the analysis must remain flexible: not every *Daubert* factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant.") (citation omitted).

"[T]he rejection of expert testimony is the exception rather than the rule."[20] "Where the opinion has a reasonable factual basis, it should not be excluded."[21] "The court's main focus should be on determining whether the expert's opinion will assist the tier of fact."[22] "[T]he trial judge ought to insist that a proffered expert bring to the jury more than the lawyers can offer in argument."[23]

It is well accepted that the *Daubert* factors are not definitive or exhaustive. "*Daubert* makes clear that the appropriate means of attacking admissible, albeit shaky, evidence is through vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof."[24] Indeed, the purpose of *Daubert* is to instruct the Court to "conduct preliminary fact-finding and to make a 'preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.'"[25] An expert can base his or her opinions on the

---

[20] *Rowland v. Outback Steakhouse of Fla., LLC,* 2024 U.S. Dist. LEXIS 9648, *4 (W.D. La. Jan. 18, 2024) (quoting Fed. R. Evid. 702).

[21] *United States v. L.E. Cooke Co.*, 991 F.2d 336, 338 (6th Cir. 1993).

[22] *Anthony Young ex rel. K.Y. v. Braum's, Inc., No. 5:19CV161-RWS-CMC,* 2021 U.S. Dist. LEXIS 75794, *15 (E.D. Tex. Mar. 25, 2021) (citing *Puga v. RCX Sols., Inc.,* 922 F.3d 285, 293 (5th Cir. 2019).

[23] *Fisher v. Halliburton,* No. H-05-1731, 2009 U.S. Dist. LEXIS 118486, *15 (S.D. Tex. Dec. 21, 2009).

[24] *Lay v. DePuy Orthopaedics, Inc*. (*In re DePuy Orthopaedics, Inc. Pinnacle Hip Implant Prods. Liab. Litig.*), 2014 U.S. Dist. LEXIS 97798, *15-16 (N.D. Tex. July 18, 2014) (citing *Daubert,* 509 U.S. at 596).

[25] *SJB Group, LLC v. TBE Group, Inc.,* No. 3:12-cv-181-SDD-RLB, 2013 U.S. Dist. LEXIS 114284, *5 (M.D. La. Aug. 12, 2013) (citing *Moore v. Ashland Chemical Inc.*, 151 F.3d 269, at 276 (5th Cir. 1998); *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579, at 597, 113 S. Ct. 2786, 125 L. Ed. 2d 469)).

opinions of other experts in the field, but Rule 703 requires a trial court to determine whether that information is of a type reasonably relied on by other experts in the field.[26]

## III. SUMMARY AND RELEVANCE OF DR. ORESKES' OPINIONS

Dr. Oreskes offered a general report in this matter that is relevant to multiple issues anticipated to be litigated at trial – including BP's defenses, Plaintiff's theory of the case that BP negatively biased the oil spill studies and sampling for litigation defense-related purposes, and rebuttal to BP's testifying experts' pollyannaish opinions regarding the purportedly "cooperative" oil spill response efforts and generation of scientific evidence relied on by BP. It is admitted that Dr. Oreskes did not study Mr. Boggs' precise harmful level of exposure, which is beyond the scope of her report and experience as a historian of science. She never stated that she was an epidemiologist, toxicologist, chemist, Industrial Hygienist, or medical doctor. Still, no court has ever ruled that these are the only categories of experts who can testify in a toxic tort case. In fact, *Kumho* and its progeny hold otherwise. And no one expert must prove the case by herself.

Dr. Oreskes reviewed numerous documents and reports, both publicly available and documents obtained through discovery. Based on her lengthy review, she found substantive reasons to doubt the quality and integrity of the measurements and studies BP influenced and relied on. Dr. Oreskes' testimony highlights that BP's actions compromised the data and studies, making them unreliable for supporting the claim of "no harm" due to exposure during the 2010 Oil Spill. Perhaps more importantly, as a historian of science with a scientific background, Dr. Oreskes' provides helpful and relevant testimony that contextualizes the document and scientific evidence, and testimony of BP's experts, in the broader pattern of historical events that occurred during the

[26] *Jeanes v. McBride,* No. 16-1259, 2019 U.S. Dist. LEXIS 107318, at *4-5 (W.D. La. June 25, 2019).

2010 Oil Spill. She shines a light and provides helpful testimonial evidence on the actions and omissions of BP related to Natural Resource Damage Assessment and oil spill response data collection and quality control – which is the primary source of scientific evidence relied on by both Parties' experts and at the heart of BP's affirmative defenses. Additionally, she provides helpful testimony on BP's refusal to provide adequate PPE and the exploitation of attorney-client privilege to hide biased or misrepresented scientific evidence. These opinions are applicable to claims and defenses being made as they go to the credibility and reliability of BP's scientific evidence and provide evidence that a jury may use to infer that BP's negligence contributed to both transient and long-term adverse health effects on oil spill cleanup workers and residents on the Gulf Coast like Mr. Boggs.

Plaintiffs' experts, including Dr. Oreskes, "need not prove the [P]laintiffs' case by themselves; they must merely constitute one piece of the puzzle that [P]laintiffs endeavor to assemble before the jury."[27]

## IV. <u>LEGAL ARGUMENT</u>

### A. Dr. Oreskes' opinions as a historian of science are reliable, and she has been admitted in other courts.

As this Court has held, to qualify as an expert, "'the witness must have such knowledge or experience in [her] field or calling as to make it appear that his opinion or inference will probably

---

[27] *See City of Tuscaloosa v. Harcros Chemicals, Inc.*, 158 F.3d 548, 565 (11th Cir. 1998); *See also Cook v. Rockwell Int'l Corp.,* 580 F. Supp. 2d 1071, 1083-84 (D. Colo. 2006) ("Neither Rule 702 nor *Daubert* require that an expert's testimony prove an element of the offering party's case for it to be admissible.") (citing *Adams v. Ameritech Servs. Inc.,* 231 F.3d 414, 425 (7th Cir. 2000)). As stated in the Reference Manual on Scientific Evidence, "scientific inference typically requires consideration of numerous findings, which, when considered alone, may not individually prove the contention." Reference Manual on Scientific Evidence, 3d. ed., at 19 (citing *Milward v. Acuity Specialty Prods. Group,* 639 F.3d 11); Susan Haack, An Epistemologist in the Bramble-Bush: At the Supreme Court with Mr. Joiner, 26 J. Health Pol. Pol'y & L. 217–37 (1999).

aid the trier in his search for truth.'"[28] "Rule 702 also permits an expert to be qualified based on 'knowledge, skill, experience, training, or education.'"[29] Further, "Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue. Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility."[30]

As described above, Dr. Oreskes is a highly qualified historian of science with extensive technical and scientific knowledge that makes her well-suited to assist the jury in this case on multiple issues in dispute as well as BP's affirmative defenses. BP has not challenged her qualifications as an expert historian yet assert her opinion testimony to be "unfounded." Dr. Oreskes has also published numerous works on the influence of corporate science and conflicts of interests – theories that go to the heart of Plaintiff's case regarding his harmful level of exposure and the reliability of BP's (and its experts') conclusion-oriented science and data.

Notably, Dr. Oreskes was qualified to testify in at least two cases where she testified about scientific methods, testing, and related scientific issues. She was admitted in a case related to the evaluation of state of scientific evidence demonstrating that synthetic substances with estrogenic activity pose potential health risks.[31] Dr. Oreskes was also admitted, after a Motion for Reconsideration was filed by the plaintiff, in the case of *Mann v. Nat'l Review*.[32]

---

[28] *Moyer v. Siemens VAI Servs., LLC*, No. 11-3185, 2013 U.S. Dist. LEXIS 208084, at *6 (E.D. La. July 1, 2013) (citing *United States v. Hicks*, 389 F.3d 514, 524 (5th Cir. 2004) (quoting *United States v. Bourgeois*, 950 F.2d 980, 987 (5th Cir. 1992)).

[29] *Moyer*, 2013 U.S. Dist. LEXIS 208084 at *6 (quoting *Hicks*, 389 F.3d at 524).

[30] *Id*. (quoting *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009)).

[31] *Eastman Chemical Company v. Plastipure, Inc. & Certichem, Inc.*, C.A. No. 12-CV-57-SS (W.D. Tex.) (oral testimony provided in May 2013).

[32] *See* Order on Motion for Reconsideration, *Mann v. National Review, Inc.*, Case No. 2012 CA 008263B (D.C. 2019) ("Mann Order on Motion for Reconsideration"), attached as **Exhibit A**.

With respect to Dr. Oreskes' testimony in *Mann*, BP's inferences made in its Motion to Exclude are misleading.[33] BP stated that the court in *Mann* only subsequently admitted Dr. Oreskes "upon a new proffer by counsel" and that she was permitted "only" to testify on the "importance of scientific expertise and the significance of the scientific method and peer review process in scientific debate."[34] BP also falsely asserts that "Oreskes offers no similar opinions here, nor are her opinions as limited as in *Mann*."[35] However, BP conveniently omitted in its briefing that the *Mann* court permitted Dr. Oreskes to provide contextual information about what makes scientific research reliable.[36]

BP's implies that Dr. Oreskes was only admitted in the *Mann* case "upon a new proffer by counsel", but that referenced proffer which provided supplemental explanation of Dr. Oreskes methodology and importance of historian testimony was incorporated into her expert report in this case.[37] In fact, Dr. Oreskes written report here is more robust than her "new proffer" in *Mann*.

---

[33] *See* BP's Motion to Exclude, Rec. Doc. 234 at 12 n. 35.

[34] *Id.*

[35] *Id.*

[36] *See Mann* Order on Motion for Reconsideration, **Exhibit A** at 22 ("The Court is swayed, however, that Dr. Oreskes should be permitted to provide contextual information about what makes scientific research reliable. Specifically, Dr. Oreskes is permitted to testify concerning the methods that produce reliable scientific knowledge, the critical role of the peer review process in establishing valid scientific claims, and who is qualified to perform scientific peer review.").

[37] *See* Mann Declaration of Dr. Oreskes, **Exhibit B**; *c.f.*, *See* Dr. Oreskes Report, ECF No. 238-7 at 5-14 (describing what a historian of science does and Dr. Oreskes' methodology).

**B. BP misstates the legal standard for admissibility for expert historians post-Ku*mho Tire,* and it conflates the rules and methods for "natural scientists" with those that apply to historians.**

In *United States v. Simmon*s, the Fifth Circuit recognized that certain areas of expertise, such as the social sciences, do not adhere to the same exactness as the *natural* sciences.[38] This principle is particularly relevant when considering the admissibility of expert testimony from Dr. Oreskes, an expert historian of science. The Supreme Court in *Daubert* established a non-exhaustive list of factors for assessing the reliability of expert testimony. Given the nature of Dr. Oreskes' expertise in the history of science, it is essential to recognize that the methodologies employed in the social sciences and for historians of science differ significantly from those in the natural sciences – like the field of Toxicology. The Fifth Circuit in *Simmons* acknowledged this distinction, noting that research theories and opinions in the social sciences cannot achieve the same level of exactness as natural science methodologies. Therefore, the trial judge must exercise broad discretion in determining the reliability of such expert testimony.

*Anderson v. Allstate Ins. Co.* is also instructive on this issue.[39] In *Anderson*, the Middle District of Louisiana held "[i]f the expert's testimony does not rest on traditional scientific methods, the court may permit testimony 'where a proposed expert witness bases her testimony on practical experience rather than scientific analysis.'"[40] "In such cases . . . courts recognize that

---

[38] *United States v. Simmons*, 470 F.3d 1115, 1123 (5th Cir. 2006) ("Because there are areas of expertise, such as the 'social sciences in which the research theories and opinions cannot have the exactness of hard science methodologies,' trial judges are given broad discretion to determine 'whether *Daubert*'s specific factors are, or are not, reasonable measures of reliability in a particular case.")).

[39] No. 17-597-JWD-SJD, 2021 U.S. Dist. LEXIS 16704 (M.D. La. Jan. 28, 2021).

[40] *Anderson*, 2021 U.S. Dist. LEXIS 16704, at *27 (quoting *Davis v. Carroll*, 937 F. Supp. 2d 390, 412 (S.D.N.Y. 2013)).

experts of all kinds tie observations to conclusions through the use of what Judge Learned Hand called 'general truths derived from . . . specialized experience.'"[41]

BP states "Dr. Oreskes admittedly does not apply any scientific or technical expertise that would assist the trier of fact in assessing Mr. Boggs' claims."[42] This statement by BP is false.[43] Dr. Oreskes never made such an admission and BP has cherry-picked Dr. Oreskes deposition testimony to suit its argument.[44] In reaching the opinions in her report, she applies specialized expertise, knowledge, and the methodologies of historians – which is admittedly distinguished from the methodology typically applied by an expert in the field of the natural sciences.

Other courts in this District have held that experts whose opinions are based on specialized knowledge and who have not performed any traditional sort of "scientific methodology" typical of the natural sciences may be admitted because "the Daubert factors compose a non-exclusive, flexible test to ascertain the validity or reliability of the methodology the expert employed."[45] The trial court's evaluation of the reliability of expert testimony must remain flexible because "[t]he

---

[41] *Id*. (quoting *Kumho Tire,* 526 U.S. at 148) (cleaned up); *see also Watson v. Snap-On Tools, Inc*., No. 04-1313, 2006 U.S. Dist. LEXIS 55301, 2006 WL 2114558, at *5 (W.D. La. July 26, 2006).

[42] *See* Rec Doc. 234-1 at 5.

[43] Due to BP's tendency to cherry-pick soundbites from deposition transcripts out-of-context to support its arguments, Plaintiff has filed the full transcript of Dr. Oreskes' deposition for the Court's consideration. *See* Dr. Oreskes' Deposition Transcript ("Dep. Tr."), attached as **Exhibit C**.

[44] *See* Dep. Tr., Exhibit C.

[45] *See Shadow Lake Mgmt. Co. v. Landmark Am. Ins. Co.,* No. 06-4357, 2008 U.S. Dist. LEXIS 86850, at *9 (E.D. La. June 17, 2008) (denying *motion in limine* for expert where the report would assist the trier of fact even though the expert "[had] not performed any sort of scientific methodology to reach his conclusions" but instead based his opinions on "specialized knowledge" of the construction industry).

factors identified in Daubert may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony."[46]

In sum, the Court's primary concern in its gatekeeping duty should be to ensure "that an expert, whether basing testimony upon professional studies or personal experiences, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."[47] Dr. Oreskes has done just that, and she is not required to apply a formalized methodology typical of natural scientists. And while BP argues that a rigid "five-factor test" should apply for "gauging the reliability of an expert's methodology,[48] that is simply not the law and the Court has wide discretion to gauge the reliability of Dr. Oreskes testimony by the factors it is inclined to believe are appropriate for her testimony as a historian. This means that a social scientist like Dr. Oreskes need not show the known "rate of error" and "existence and maintenance of standards and controls", nor whether her opinions can be "tested" in the classical, experimental science sense in a laboratory. BP has its own counter-experts pertaining to Dr. Oreskes' opinions and this should be a case for a "battle of experts." BP is free to recreate Dr. Oreskes' opinions by reviewing the same documents, and free to disagree with her opinions with counter experts.

### C. Under *Kumho Tire Co. v. Carmichael* and *Daubert*, Dr. Oreskes' opinions are admissible because they are based on professional publications, personal experience, and specialized knowledge beyond the purview of the jury.

Dr. Oreskes employs the same level of intellectual rigor that characterizes the practice of a historian expert. Despite BP's complaints, Dr. Oreskes does not need to employ a formalized

---

[46] *Everson v. Nautilus Ins. Co.,* No. 23-1360, 2024 U.S. Dist. LEXIS 184287, at *10 (E.D. La. Oct. 9, 2024) (citing *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 150, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999)).

[47] *See id.* at *10 (citing *Kumho Tire Co.,* 526 U.S. 137, 152, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999)).

[48] *See* Rec. Doc. 9.

methodology in order to offer reliable expert opinion testimony as a historian.[49] Dr. Oreskes explained her methodology and that of historians in both her report and deposition.[50]

BP cites the inapposite case of *Zenith Elecs. Corp. v. WH-TV Broad. Corp*. and asserts "[s]omeone else using the same data and methods must be able to replicate the result."[51] However, this is not some hard and fast rule, and the Fifth Circuit has held that the Court's approach to applying *Daubert* principles should be a "flexible" analysis, as expressed in *Kumho Tire*.[52] "[T]he Advisory Committee note to Rule 702 of the Federal Rules of Evidence explains that testimony from an expert whose reliability is based primarily on his or her personal observations, professional experience, education, and training may be admissible."[53] Further, *Zenith* is distinguished because the expert, in that case, was not an expert historian and he relied on his "intuition" to forecast a company's hypothetical projected growth. The expert also did not have the same kind of vast experience and body of published works like Dr. Oreskes, who is a historian with numerous publications. Dr. Oreskes' expertise is grounded in a robust body of work, and he is recognized as

---

49 *See* supra note 16.

50 *See e.g.,* Dr. Oreskes Report, Rec. Doc. 238-7 at 1-14; *see also* Dep. Tr., Exhibit C at 22:10-14 ("…the whole point of the first section of my report is to describe as accurately and fully as possible what the methodologies of history of science are and how and why they are relevant and useful in a case of this type"); *id*. at 22:20-24(describing how the expert's methodology is consistent with colleague historians in the same field at Harvard University who have done similar work); *id*. at 25:13-17 ("But in history, our methodologies tend to be more implicit. They tend to be more embedded. We don't have the kinds of explicit discussions of methodology that you would find . . . for example, in a biochemistry case."); *id*. at 210:11 – 213:8; id at 325:4-22 ("The point of objective research is to look at the evidence and let the chips fall where they fall."); *id*. at 327:1-9 ("…if I saw evidence that I thought was exculpatory I would definitely not ignore it or discount it. I would take that seriously….").

51 *See* Rec. Doc. 234-1 (also citing *Moore*, 151 F.3d at 276).

52 *Schmidt v. MTD Prods*., No. 04-3412, 2006 U.S. Dist. LEXIS 45280, at *5-6 (E.D. La. July 3, 2006) (citing *Kirkland v. Marriott International Inc*., 416 F. Supp.2d 480, 484 (E.D. La. 2006)).

53 *Id*. at *5 (citing Fed. R. Evid. 702, Advisory Committee's Note).

a premier expert in her academic field of study, which provides a reliable foundation for her testimony.[54] This contrasts with the expert in *Zenith* who relied purely on intuition.

BP also cites to *Marvel Characters, Inc*. to argue that Dr. Oreskes' opinions is *ipse dixit*,[55] but the *Marvel* case is wholly distinct. In *Marvel Characters, Inc*., the challenged comic book experts appear to have held themselves out as experts in the history of comic books and comic book publishing, which is not the same as the academic discipline of history as practiced by Dr. Oreskes. The experts in that case also "[did] not bring their expertise to bear in any . . . way" and they relied "by and large" on "undergirded" statements made by freelance (comic book) artists.[56] And supporting Plaintiff's argument, the Second Circuit held that it "[had] no doubt that a historian's 'specialized knowledge' could potentially aid a trier of fact in some cases", especially in cases where dense historical texts and documents are at issue.[57] Dr. Oreskes' opinions rest on the firm foundation of her voluminous reliance materials, training, and experience as a historian. She is far more qualified and trained than comic book authors, there is no comparison.

Further, other courts have found defendants' arguments that an expert's "failure to use a social science methodology renders [their] opinion unreliable" to be "misplaced."[58] Experts who rely on their extensive experience and training, even where a formalized methodology may exist

---

[54] *Casey v. Geek Squad® Subsidiary Best Buy Stores, L.P.,* 823 F. Supp. 2d 334, 345 n.12 (D. Md. 2011) (Experience alone can provide a sufficient foundation for reliable expert testimony, which "need not rely on anything like the scientific method.").

[55] *See* Rec. Doc. 234-1 at 12 (citing *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119 (2d Cir. 2013)).

[56] *See Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 136 (2d Cir. 2013).

[57] *See id*. at 135-136.

[58] *See In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.,* Nos. 1:00-1898, MDL 1358 (SAS), M21-88, 2008 U.S. Dist. LEXIS 37331, *27-28 (S.D.N.Y. May 7, 2008) (admitting expert who "applies his extensive experience in ethanol production and distribution logistics to analyze an array of facts.").

in a similar subfield of social science, are not unreliable simply because they do not use such a formalized social science methodology.[59] Similarly, "[a] non-scientific expert may rely on *experience* to assess facts."[60] If BP disagrees with Dr. Oreskes' opinions or believes them inaccurate or without foundation, they may raise these issues on cross-examination.

**D. Dr. Oreskes' opinions are based on sufficiently relevant, reliable facts and data.**

"The basic standard of relevance . . . is a liberal one."[61] "'[E]vidence, to be relevant to an inquiry, need not conclusively prove the ultimate issue of fact, but only have 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'"[62] With respect to the danger of unfair prejudice, "The Fifth Circuit requires 'courts to look at the 'incremental probity' of the evidence in question in analyzing the offering party's need to make this form of proof and the tendency of the questioned evidence to invite an irrational decision.'"[63]

BP asserts Dr. Oreskes "reviewed and regurgitated" limited documents selected by Plaintiff's counsel.[64] This too is false. It is intellectually dishonest to assert that Dr. Oreskes extensive work was merely a "regurgitation" of documents. That is not what Dr. Oreskes did.

---

[59] *See id.* (holding that the expert "may properly rely on his experience to testify about all matters within his experience, including basic economic considerations. The only requirement is that he do so with the same degree of intellectual rigor as a professional in his field.").

[60] *Id.* at 29.

[61] *United States v. Kuhrt*, 788 F.3d 403, 420 (5th Cir. 2015) (quoting *Daubert*, 509 U.S. at 587).

[62] *Suazo v. Atl. Sounding Co.*, No. 05-6043, 2009 U.S. Dist. LEXIS 98418, at *1-2 (E.D. La. Mar. 10, 2009) (citing Fed. R. Evid. 401; *McKoy v. North Carolina*, 494 U.S. 433, 440, 110 S. Ct. 1227, 108 L. Ed. 2d 369).

[63] *Suazo*, 2009 U.S. Dist. LEXIS 98418, at *5 (quoting *Jackson v. Johns-Manville Sales Corp.*, 750 F.2d 1314, 1334 (5th Cir. 1985)).

[64] *See* Rec. Doc. 234-1 at 5.

Rather, she spent numerous hours reviewing documents and public records, contextualizing the documents related to the Deepwater Horizon Oil Spill, and then offered well-reasoned and supported opinions from her unique experience and qualifications as an expert historian of science, beyond the purview of a layperson. Dr. Oreskes' advanced understanding of scientific evidence, biases, and conflicts of interest—to use a few examples—is beyond the common understanding of lay knowledge. Lay people do not understand the intricacies of voluminous government reports, nor would they be able to contextualize individual document evidence if presented and interpreted piecemeal. Dr. Oreskes thus goes far beyond "regurgitating" information and that assertion by counsel does not do justice to Dr. Oreskes' extensive accolades and work. BP does not seem to understand that Dr. Oreskes' opinions are derived from a very specialized academic discipline.[65]

Of course, Plaintiff's counsel necessarily had to provide Dr. Oreskes with documents as many documents were obtained by counsel through the course of discovery and were not publicly available – *i.e.,* the documents were designated "confidential" by BP and its consultants.

Secondly, Dr. Oreskes relied on a number of public sources as well – like the Presidential Commission Report – which BP's counter experts like Dr. Paskewich failed entirely to review. To assert that the documents Dr. Oreskes reviewed was "limited" is also disingenuous because Dr. Oreskes reviewed voluminous documents, and cited sufficient documents in her report.[66] However, BP's experts like Mr. Paskewich, reviewed, at best, only a fraction of those documents.

---

[65] *See* Dr. Oreskes Report, Rec. Doc. 238-7 at 8.

[66] To the extent BP argues Dr. Oreskes' report is not sufficient or complete, other courts in the Fifth Circuit have rejected similar arguments. *See Nkansah v. Martinez*, No. 3:15-CV-00646, 2017 U.S. Dist. LEXIS 100081, at *19 (M.D. La. June 28, 2017) ("While the report is bare bones, to say the least, especially when viewed together with her deposition and supplemental affidavit, the opinions in the report can be ascertained."); *Am. Gen. Life Ins. Co. v. Russell*, No. 16-851-JWD-RLB, 2019 U.S. Dist. LEXIS 171175, at *11 (M.D. La. Sep. 16, 2019) ("When the report is combined with the deposition, it is clear that sufficient information has been provided regarding

BP also asserts that some of Dr. Oreskes testimony has "nothing to do with 'history of science,'" but BP is simply mistaken and this statement is a product of refusing to fairly and fully Dr. Oreskes' report and testimony explaining why her expertise and knowledge are relevant and applicable to this case. "Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue."[67] Even assuming, *arguendo*, that BP's is correct and Dr. Oreskes' testimony strays outside her specialization in the history of science, that fact goes merely to the weight of evidence rather than admissibility.[68]

Further, if the Court believes it is premature to determine whether the factfinder will be aided by certain expert opinions in this matter and that certain knowledge is "within the common experience and knowledge of the factfinder to assess…", the Court should deny the motion to strike without prejudice as premature and allow BP to file a later motion in limine, if necessary.[69] Dr. Oreskes' report is voluminous, and it is still unclear which arguments or scientifically fallacious theories and scientific evidence BP will advance at trial.

---

Bacon's opinions, data relied upon and reasons supporting it."); *Anderson v. Allstate Ins. Co.*, No. 17-597-JWD-SJD, 2021 U.S. Dist. LEXIS 16704, at *47 (M.D. La. Jan. 28, 2021) (holding that matters of sufficiency of evidence contained in an expert report and inconsistencies go to the weight of the testimony and can be addressed at trial in cross-examination).

[67] *United States v. Akula*, No. 21-98, 2024 U.S. Dist. LEXIS 16658, at *20 (E.D. La. Jan. 31, 2024) (internal citation omitted).

[68] *See Sexton v. Exxon Mobil Corp.*, No. 17-482-JWD-RLB, 2020 U.S. Dist. LEXIS 162746, *24-25 (M.D. La. Sep. 4, 2020).

[69] *See In re M&M Wireline & Offshore Servs., LLC*, 2016 U.S. Dist. LEXIS 120542, at *38 (E.D. La. Sep. 7, 2016) (holding that expert testimony from a "maritime and marine safety" expert was founded on extensive experience and knowledge, as well as thirteen different documents, and that the party opposing his admission did not assert how his methodology "was so flawed that it would render [his] entire testimony unreliable" even where it argued there was "no set protocol to establish the reliability of investigations made by other persons]" on which the expert's testimony will be based).

**E. Dr. Oreskes' opinions are not unduly prejudicial. Further, BP's complaints that Dr. Oreskes "usurp[s] the roles of the jury, counsel, and Your Honor"[70] are misplaced.**

Evidence is admissible if it is admissible for any purpose, the fact that it is inadmissible for another purpose does not render the evidence inadmissible.[71] If evidence is admissible for one purpose but not another, "the court, on timely request, must restrict the evidence to its proper scope and instruct the jury accordingly."[72] However, the court has discretion in the form and manner of the limiting instruction "so long as the general instructions sufficiently serve the limiting purposes of Rule 105."[73]

Dr. Oreskes' testimony is admissible and relevant to issues in this case. First, BP placed its actions at issue when it plead its affirmative defenses.[74] This Court has admitted witnesses to offer relevant expert testimony about factual issues relative to an affirmative defense.[75]

In Affirmative Defense nineteen, BP alleges that it "cannot be held liable for any damages resulting from or caused by actions taken pursuant to federal, state, or local government control,

---

[70] *See* Rec. Doc. 234-1 at 9.

[71] *See United States v. Abel*, 469 U.S. 45, 56 (1984) ("[T]here is no rule of evidence which provides that testimony admissible for one purpose and inadmissible for another purpose is thereby rendered inadmissible; quite the contrary is the case.").

[72] *United States v. Imo*, 739 F.3d 226, 234 (5th Cir. 2014) (quoting Fed. R. Evid. 105).

[73] *Id.* (quoting *Lubbock Feed Lots, Inc. v. Iowa Beef Processors, Inc.*).

[74] *See Answer*, Rec. Doc. 11.

[75] *See e.g., Moyer v. Siemens VAI Servs., LLC*, No. 11-3185, 2013 U.S. Dist. LEXIS 208084, at *13-14 (E.D. La. July 1, 2013) (admitting expert on his experiences to offer testimony related to a lack of feasibility affirmative defense); *see also Kakkanathu v. Rohn Indus.*, No. 05-1337, 2008 U.S. Dist. LEXIS 80546, at *6 (C.D. Ill. Sep. 16, 2008) (holding "because the expert report supports [defendant's] affirmative defense, the [c]ourt finds this report and testimony relevant"); *see also Robertson v. Dorn*, No. 2:21-CV-00064-SAB, 2022 U.S. Dist. LEXIS 28266, at *16 (E.D. Wash. Feb. 16, 2022) ("Defendants' intoxication evidence and expert testimony from Mr. Capron and Dr. Norton are relevant to their affirmative defense of intoxication—specifically non-per se intoxication.'").

direction, delegation, or authorization,"[76] in the Twentieth Affirmative Defense, BP claims it "may not be held liable for any damages resulting from or caused by the actions of any BP Parties to the extent such damages were exacerbated by federal, state, or local government actions"[77] and in the Twenty-first Affirmative Defense it claimed it "complied with applicable laws, regulations, standards, as well as with any directions/instructions of the Unified Command, and that its actions were consistent with the National Contingency Plan."[78] Dr. Oreskes' testimony regarding BP's conduct directly relates to and rebuts BP's claims. She provides relevant and probative testimony that government agencies and employees strongly disagreed with BP's approach[79] She opines that BP made numerous choices and/or omissions that compromised both the quantity and the quality of data collection, or prevented the collection of scientific evidence that could have established health effects on those exposure to the oil spill.[80] For example, Dr. Oreskes' opinion was that BP ignored government science recommendations, for example, it did not implement a biomonitoring program.[81] These issues are complex, the evidence is multi-tiered and voluminous, and BP is incorrect that jurors are "perfectly capable" of interpreting all of the scientific evidence – as shown by the fact that BP's own experts have competing views regarding the same set of document evidence.

---

[76] *See Answer*, Rec. Doc. 11 at 26.

[77] *See id.*

[78] *See id*. at 27.

[79] *See* Dr. Oreskes' Report, ECF No. 238-7 at 27.

[80] *See id*. at 22.

[81] *See id*. at 38.

Second, Dr. Oreskes' testimony rebuts BP's experts namely Dr. Shea,[82] Dr. Haddad,[83] Mr. Paskewich,[84] Namely, her testimony shows a bias in the evidence they rely upon to form their opinion and rebuts bald claims that BP fully cooperated or collaborated with Trustees in the NRDA process and oil spill response work to generate reliable scientific evidence using the scientific method – *i.e.,* Dr. Oreskes' speaks to whether BP's experts' reliance evidence is results-oriented or conclusion-oriented.[85] Her testimony demonstrates that the BP collected data was influenced by BP. Therefore, BP by relying on the "collaborative" nature of the studies opened the door to evidence of BP's manipulation or interference with the studies its experts rely.[86]

Third, Dr. Oreskes' testimony is relevant to the science of the case. This is a complex toxic tort case that involves numerous competing experts applying different methodologies to different sources of evidence. The everyday experiences of the jurors do not prepare the jurors to understand the complex science and what makes science reliable or unreliable; therefore, Dr. Oreskes' testimony prepares the jury to decide whether to credit Plaintiff's experts or Defendants experts.[87]

---

[82] Dr. Shea is proffered to testify that Mr. Boggs was not exposed to harmful chemicals based on non-detects in BP's sampling. *See* Report of Dr. Shea, Rec. Doc. 238-4.

[83] Dr. Haddad is proffered to testify regarding the National Contingency Plan, and Cooperative and Independent Studies. *See* Report of Dr. Haddad, Rec. Doc**.** 238-4.

[84] Mr. Pasewich is proffered to testify that BP "conducted air monitoring under Unified Command direction" and to the "[c]ollaboration" that occurred during the response. *See* Report of Mr. Paskewich, Rec. Doc. 237-1 at 20–22.

[85] *See Hebert v. Rogers*, 890 F.3d 213, 225 (5th Cir. 2018) (noting "expert testimony could have been rebutted with evidence that the expert's factual assumptions were incorrect").

[86] *See United States v. Chavis*, 772 F.2d 100, 107 (5th Cir. 1985) (noting defendant "opened the door" to expert testimony on intent with his questioning of his expert).

[87] *See Gowdy v. Marine Spill Response Corp.*, 925 F.3d 200, 206 (5th Cir. 2019) ("'[W]hen conclusions as to the evidence cannot be reached based on the everyday experiences of juror,' expert testimony is needed." (quoting *Huffman v. Union Pac. R.R.*, 675 F.3d 412, 419 (5th Cir. 2012))).

Fourth, Dr. Oreskes' testimony does *not* contain *any* conclusions or opinions regarding BP's motive or intent. Therefore, the cases BP relies on are inapposite.[88] On the other hand, BP's experts and attorney are anticipated to assert that the available scientific evidence supports only a finding of no causation – and Dr. Oreskes' opinions are more than helpful to the trier of fact on those issues.

Fifth, an expert may usually testify even if it merely supports an inference of intent or motive as long as the expert leaves the inference for the jury.[89]

Finally, and in the alternative, the Court has the discretion to reserve judgment now regarding BP's Motion. Much of BP's argument will be re-briefed in forthcoming motions in limine regarding non-expert evidentiary issues, and BP will be allowed to later brief the Court regarding whether it should limit testimony that touches on corporate intent or motive or evidence that it asserts is prejudicial. Also, since punitive damages have been bifurcated, and Dr. Oreskes' opinions are probative on the extent of such damages, it would be premature to find any part of Dr. Oreskes' testimony inadmissible at this time.

[88] *See Greger v. C.R. Bard*, No. , 2021 U.S. Dist. LEXIS 163240, at *26 (E.D. Tex. Aug. 30, 2021) (allowing expert testimony on failure to account for fatigue failure but "to the extent Dr. Ritchie is opining that Bard actually or likely held a particular intent or motive in undertaking its IVC testing, e.g., that Bard deliberately disregarded the potential for fatigue failures, such testimony is inadmissible."); *see also In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 546–47 (S.D.N.Y. 2004) (finding testimony regarding motive and intent "matters which a jury is capable of understanding and deciding without an expert's help").

[89] *See United States v. Akwuba*, 7 F.4th 1304, 1318 (11th Cir. 2021) (discussing Fed. R. Evid. 704(b)); *see also United States v. Cohen,* 887 F.3d 77, 85 (1st Cir. 2018) (expert testimony regarding "'IOLTA rules and regulations,' coupled with Cohen's 'disregard' of those rules and regulations, also could have been probative of Cohen's intent and therefore was of assistance to the jury."); *Marquette Transp. Co. Gulf-Inland LLC v. Navigation Mar. Bulgarea*, No. 19-10927, 2022 U.S. Dist. LEXIS 111748, at *11 (E.D. La. Apr. 1, 2022) ("The jury will determine from the evidence what Johnson's state of mind was. And the jury will determine which parties contributed to the accident. Marquette's experts' testimony may aid the jury in so deciding, but the experts may not make those determinations for the jury.").

## V. CONCLUSION

WHEREFORE, Plaintiff respectfully requests the Court deny BP's Motion to Exclude the Expert Testimony of Plaintiff's Expert Dr. Naomi Oreskes.

Dated: November 20, 2024

Respectfully Submitted,

By: */s/ Jason Larey*
Jason Larey, Esq.
Florida Bar No. 1019327
**THE DOWNS LAW GROUP**
3250 Mary Street, Suite 307
Coconut Grove, Florida 33133
Telephone: (305) 444-8226
Facsimile: (305)-444-6773
Email: jlarey@downslawgroup.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing has been served on Counsel registered to receive electronic service via electronically filing using the CM/ECF System, which will send a notice of electronic filing through the Court's electronic filing system, on this 20th day of November 2024.

*/s/ Jason Larey*
Jason Larey, Esq.